# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CANDICE WILLIAMS, individually, and as Administrator of the Estate of her unborn fetus, and DANIEL SIGERS, | ) ) ) ) |
| Plaintiffs, | ) No. 09 C 1915 |
| v. | ) ) |
| | ) Judge Robert W. Gettleman |
| CHRISTINE ANDERSON, MARYLIN REID, MATTHEW WAGNER, THE CRETE-MONEE BOARD OF EDUCATION, and THE CRETE-MONEE HIGH SCHOOL, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Candice Williams and Daniel Sigers have filed a fifteen-count third amended complaint against defendants Christine Anderson, Marylin Reid, Matthew Wagner, the Crete-Monee Board of Education, and the Crete-Monee High School. Plaintiffs allege that Juan N. Garcia, Richard P. Pasquini, and Reid unlawfully seized Williams using excessive force, resulting in the wrongful death of her fetus.[1] Anderson, Wagner, and the Crete-Monee School District (the "School District Defendants") have moved to dismiss Counts I, II, III, and XV. For the reasons discussed below, the School District Defendants' motion to dismiss is denied as to Counts I, II, and III, and granted as to Count XV.

---

[1]Defendants' motion to dismiss with respect to Michael Buzan, Garcia, Pasquini, and the Village of Crete was granted by agreement of the parties.

# FACTS

The facts alleged in the complaint are taken as true for purposes of the instant motion. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Williams learned she was pregnant in March 2008 while a senior at Crete-Monee High School. On April 3, 2008, she decided to participate in track team practice after school. The track team ended practice and began gathering their belongings to leave the school at about 5:15 p.m. Williams sat on the bench just outside the gym waiting for her school bus, which generally arrived between 5:30 and 5:50 p.m.

At approximately 5:28 p.m., Reid and another security guard began asking students in the hallway to leave the building. Williams moved to the vestibule to wait just inside. The security guards then told her to go all the way outside. She informed them that she was cold, pregnant, and suffering from anemia and that she wanted to stay in the breezeway until her bus arrived. Anderson, a teacher, came up and said, "that's trespassing, call the police and have her removed."

Williams refused to leave the building, but off-duty police officers Garcia and Pasquini forcibly removed her. She was allegedly "pushed, grabbed, dragged, thrown to the ground then smashed into the ground" for approximately ten to fifteen minutes, and she was subsequently arrested for criminal trespass. Plaintiffs assert that Williams lost her fetus as a result of defendants' conduct.

On March 25, 2009, Williams was tried for a class B misdemeanor of criminal trespass. On April 17, 2009, the state criminal court granted her motion for a directed verdict.

**DISCUSSION**

**Legal Standard**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). Nevertheless, the complaint must plead sufficient facts to suggest plausibly that the plaintiff is entitled to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

**Analysis**

Counts I, II, and III (Wrongful Death)

Against all defendants, plaintiffs' wrongful death claims include: negligent conduct (Count I); intentional conduct (Count II); and a survival action (Count III). With respect to the School District Defendants, plaintiffs allege that their negligent and intentional conduct proximately caused the death of the fetus in that they "encouraged and allowed" Garcia, Pasquini, and Reid[2] to take actions that caused the death, and that they refused to seek medical attention for Williams while she was injured on school grounds under their supervision.

The School District Defendants argue that they did not owe a duty of care to protect Williams or her fetus from the police officers' conduct and that they were not the proximate cause of the death. In response, plaintiffs argue that the School District Defendants mislead the

---

[2]The phrase "encouraged and allowed" is used in conjunction with Reid's name only in Count I.

court.³ Plaintiffs clarify that they are actually alleging that negligent and intentional conduct proximately caused the death of the fetus because the School District Defendants refused to seek medical attention. Thus, the issues as framed by plaintiffs are whether the School District Defendants had a duty to call for medical care and whether the failure to call for medical care was a proximate cause of the death.

With respect to duty of care, plaintiffs cite three cases, none of which are factually similar to the instant case. Plaintiffs argue that East v. City of Chicago, 719 F. Supp. 683 (N.D. Ill. 1989), holds that failure to provide medical care is a proper basis for a wrongful death claim. But East is not helpful in determining whether the School District Defendants had a duty to call for medical care. The decedent in East was in custody of police officers and personnel when they denied medical attention. Similarly, in Torres v. City of Chicago, 123 F. Supp. 2d 1130, police officers responding to a report of a shooting waited nearly an hour and a half before calling for medical care for the decedent, who had multiple gunshot wounds. Finally, plaintiffs cite to a section of Haist v Wu, 235 Ill. App. 3d 799, 816 (1st Dist. 1992), in which the appellate court considered a directed verdict on the question of contributory negligence. In Haist, the husband of the decedent brought a wrongful death claim against a doctor for failure to inform the decedent of ultrasound results showing she had a potentially life-threatening condition.

The School District Defendants distinguish East and Torres from the instant case and recognize that the issue is whether Williams was under the School District Defendants'

---

³Despite similar wording in the third amended complaint, plaintiffs state that "the issue is not whether the School District Defendants 'encouraged and allowed' Officers Garcia and Pasquini to [take actions using excessive force], but rather, whether their failure to provide Williams medical care was a proximate cause of the fetus' death."

4

supervision or custody such that they owed her a duty of care. They argue that she was not because the incident occurred after school hours, and the police officers took control and custody of Williams. In addition, the School District Defendants argue that East and Torres explain what supervision and custody entails and establish that no duty arose in the instant case.

The fact that Williams was in the custody of police officers, however, does not necessarily mean that others at the scene had no duty to call for medical care. In Ramirez v. City of Chicago, 82 F. Supp. 2d 836 (N.D. Ill. 1999), the court rejected paramedics' argument that they had no duty to the plaintiff because he was in police custody. As recognized by Pesek v. Marzullo, 524 F. Supp. 2d 1007, 1010 (N.D. Ill. 2006),[4] however, the paramedics in Ramirez were on-duty and dispatched to the scene of the incident. Unlike the defendants in Torres and Ramirez, the School District Defendants were not dispatched to the scene to render aid.

Williams was not in the School District Defendants' custody like the decedent was in custody of police officers and personnel in East. The School District Defendants were also not at the scene of the excessive force to render aid. Nevertheless, plaintiffs' allegation that Williams was under the School District Defendants' supervision such that they owed her a duty of care is sufficiently pled to withstand a motion to dismiss. According to the third amended complaint, Anderson told the security guards to contact the police and, while Williams was under the School District Defendants' supervision on school grounds, Anderson and Wagner witnessed the police officers using excessive force. Moreover, the School District Defendants state that Anderson and Wagner were "merely trying to get [Williams], as well as other students,

---

[4]Both Ramirez and Pesek involve 42 U.S.C. § 1983 claims. Nevertheless, they are instructive here.

to leave the building" — conduct that supports the notion that they were there in their capacity as teachers and supervisors.

The School District Defendants further argue that they were not the proximate cause of the loss of the fetus. The parties do not argue the issue in any depth.[5] The court concludes that plaintiffs have, on a minimal level, sufficiently pled proximate cause to withstand a motion to dismiss. Plaintiffs allege that the School District Defendants witnessed the police officers' use of excessive force, knew Williams was pregnant, and knew she was injured. Under the facts at this stage of the proceedings, applying the liberal rules of construction on a Rule 12(b)(6) motion, the court finds that the third amended complaint plausibly alleges that it was reasonably foreseeable that the School District Defendants' failure to call for medical attention could result in the loss of the fetus.

The motion to dismiss is denied as to Counts I, II, and III. The court does not reach the issue of whether the failure to call for medical care was a proximate cause of the death for this reason.

Count XV (Negligent Hiring)[6]

In their third amended complaint, plaintiffs claim for the first time that the Crete-Monee Board of Education knew or should have known that Reid was unfit to be hired as a security guard to supervise high school students. Specifically, plaintiffs allege that Reid had a discriminatory bias against African American female students. Defendants respond that the

---

[5]The School District Defendants initially argue that the request for police assistance did not proximately cause the loss of the fetus. Plaintiffs again re-frame the issue as whether the failure to call for medical care was a proximate cause of the death.

[6]Count XV alleges negligent hiring against only the Crete-Monee Board of Education.

claim is time-barred under a one-year statute of limitations and that it does not relate back to the filing of the original complaint.

Fed. R. Civ. P. 15(c)(1) provides that an amendment of a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." This court has previously held that, "where an amendment changes the theory on which relief is sought or corrects a pleading after the statute of limitations has run, and the amendment does not prejudice the parties to an action, Rule 15(c) permits such [change] to relate back to the date of the original pleading." Trammel v. Brown, 1995 WL 708666 *3 (N.D. Ill. 1995) (citing Woods v. Indiana University, 996 F.2d 880, 884-86 (7th Cir. 1993) ("[c]onsistent with its history and purpose, Rule 15 (c) has uniformly been applied to relate back amendments that...change the theory on which plaintiff seeks recovery").

Plaintiffs respond that: (1) the conduct described in the original complaint and subsequent amended complaints is the same; and (2) the inclusion of a Monell claim apprised the Crete-Monee Board of Education that plaintiffs allege tortuous conduct. As a preliminary matter, even though all the complaints allege that Williams lost her fetus as a result of battery and assault, plaintiffs do not dispute that they did not add facts regarding Reid's background until the third amended complaint. The additional facts involve the hiring of Reid. Thus, the "conduct, transaction, or occurrence set out" in the most recent complaint is that decision to hire, not the subsequent battery and assault.

The elements of a Monell claim are: (1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom, policy or practice of the local government unit; and (3)

7

that such action was the cause of the deprivation. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 692 (1978). In the instant case, plaintiffs allege that the Crete-Monee Board of Education encouraged school personnel to cover up misconduct, ignored student complaints, and failed to properly train school personnel about safety and security. Plaintiffs argue that these allegations, along with claims of assault and indemnity, put defendants on notice that they would have to defend against claims involving hiring, failure to train, and failure to discharge. A negligent hiring claim, however, would necessarily require defendants to inquire into events prior to and different from those that address covering up misconduct, ignoring student complaints, and failing to properly train school personnel after they were hired. As in Williams v. Chicago Bd. of Educ., 1997 WL 467289, at *5 (N.D. Ill. 1997), defendants would have to examine Reid's employment history and the information the Crete-Monee Board of Education knew or should have known when they hired him.

Plaintiffs further argue that they could not have known about Reid's background prior to discovery and that equitable tolling applies. Equitable tolling "differs from [the discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but [despite diligent inquiry] he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." Smith v. City of Chicago Hts., 951 F.2d 834, 839 (7th Cir. 1991). The defendant need not act wrongfully or act at all. Equitable tolling is unavailable to plaintiffs, however, because they were aware of the circumstances of the incident and could have inquired into Reid's background long before the one year statute of limitations ran.

Count XV is dismissed.

## **CONCLUSION**

For the reasons discussed above, the School District Defendants' motion to dismiss is denied as to Counts I, II, and III, and granted as to Count XV. This matter is set for a report on status January 5, 2011, at 9:00a.m.

**ENTER:** December 2, 2010

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**